IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS BEN MARTIN<br><br>Petitioner,<br><br>v.<br><br>WARDEN ROBERT POWELL,<br><br>Respondent. | **MEMORANDUM DECISION AND ORDER DISMISSING PETITION**<br><br>Case No. 1:23-cv-003-TS<br><br>District Judge Ted Stewart |

Petitioner Travis Ben Martin, appearing *pro se*, petitions this court for habeas corpus relief from his 2021 convictions of aggravated kidnapping and possession of a dangerous weapon by a restricted person. *See* 28 U.S.C.S. §2254(a) (2025). Under the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA") federal district courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. Petitioner argues that his convictions relied on evidence which was obtained pursuant to violations of the Fourth Amendment. Respondent argues that Petitioner's claims are ineligible for relief under *Stone v. Powell*, 428 U.S. 465 (1976) because Petitioner already had a full and fair opportunity to present his Fourth Amendment claims in the state courts. For the reasons that follow, the court finds that Petitioner has already received a full and fair opportunity to litigate his Fourth Amendment claims in the state courts. The Petition is DISMISSED.

## CLAIMS

The Amended Petition (ECF No. 12) asserts two challenges to his convictions. First, petitioner argues that his conviction relies on evidence that should have been excluded because it was obtained by an unlawful search of his home. *Id*. at 4. Second, Petitioner argues that he was

1

unlawfully arrested within the curtilage of his home. *Id*. at 6.

## FACTUAL BACKGROUND[1]

On October 10, 2020 Petitioner accused his roommate Kate Gwilliam ("Victim") of stealing some of Petitioner's personal property. Petitioner held Victim hostage at the point of a machete for several hours, threatening to kill her and telling her that she would not be released until she returned the missing property.

The next day, Victim called 911 to request police assistance. She told the dispatcher that she was being kicked out of her house and that Petitioner had held her hostage at the point of a machete the day before. Victim told the dispatcher that she would wait for the police in her car, parked in the yard. The dispatcher relayed that information to Woods Cross Police.

One of the responding officers described the incident as "sort of a disorderly conduct call." Upon arrival, the officer parked outside the property and approached on foot. He found Victim in her car parked near the front porch. When officers reached the fence around the yard, they found a locked chain across the driveway, preventing Victim from leaving. As the officers entered the property Petitioner immediately confronted them. Petitioner told the officers that they were trespassing and ordered them off the property. Officers disregarded Petitioner's instructions and proceeded into the yard to investigate.

While the officers interviewed Victim and another resident, Petitioner "approached upset." Petitioner repeatedly refused to comply with commands like "go over there," "back up" and "stay outside." As Petitioner continued to object to police presence, Victim reaffirmed her consent for police presence to assist with the dispute. Petitioner verbally engaged with Victim and refused to comply with an officer's command to "go to the fence line."

---

[1] This background is based primarily on findings of fact made in the district court's Order Denying Defendant's Motion to Suppress, *State v. Martin*, Case No. 201701891, dkt. no. 195 (Utah 2d Dist. May 26, 2021) (ECF No. 20-4.)

Police detained the Petitioner, placed him in handcuffs and required him to wait in a patrol car while they completed their interviews. The officer informed Petitioner that he was being detained because he was moving around too much and not complying with instructions, but that he was not under arrest: "You are being detained right now . . . for your safety and ours."

During the interviews, one of the officers recognized two vehicles parked on the property from a recent incident where they had been seen dropping off a stolen trailer at a restaurant. A witness confirmed that he and Petitioner had parked the stolen trailer at the restaurant. He also said that Petitioner was responsible for the chain across the driveway that prevented Victim from leaving. Victim and another witness informed the officer that one of the vehicles in the yard was also stolen.

After Petitioner had been detained, Victim gave the police her account of the prior day's altercation. She told officers that Petitioner had accused her of taking his belongings. She said that Petitioner brandished a machete while preventing her from leaving and threatened to kill her if she didn't return his property. According to Victim "[i]t was for like an hour, he threatened to kill me, he said he was going to kill me." She claimed that Petitioner denied her access to the restroom. One of the other housemates corroborated Victim's allegations. "[Petitioner] fukin raised [the machete] up and said 'I'm going to kill you bitch.' It was not good." The resident told the officer that Petitioner still had a machete inside the house.

Officers then informed Petitioner that he was under arrest and issued a *Miranda* warning. The local officers also obtained consent from Victim and the other resident to conduct a protective sweep of the home, but no evidence was obtained during the sweep or Petitioner's detention.

At the time, Petitioner was on federal supervised release following a conviction for bank

3

robbery. His supervised release agreement states that he "must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon" and "must submit your person, residence, office or vehicle to search, conducted by the probation office as [sic] a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband of a violation of a condition of release . . . ."

The local police contacted federal probation officers and informed them that there was evidence that Petitioner had violated the terms of his supervised release. While two federal probation officers drove together to the scene, they were briefed that Petitioner was suspected of possessing a machete he had used to make threats. When the federal probation officers arrived, the local police updated them on the investigation. The probation officers spoke with the three other housemates. The probation officers then requested local police to assist them with a probation search. The search discovered multiple bladed weapons belonging to Petitioner, including a machete.

## PROCEDURAL BACKGROUND

The State charged Petitioner with aggravated kidnapping and two counts of possession of a dangerous weapon by a restricted person, all third-degree felonies. Amended Information (ECF No. 20-2, at 1-2.) At trial, Petitioner moved to exclude all evidence, arguing that but for the entry into the yard, the local officers would not have obtained any evidence or testimony. Motion to Suppress (ECF No. 20-3 at 2.)

The trial court conducted an evidentiary hearing for the motion to suppress on April 19, 2021. Docket, *State v. Martin*, Case No. 201701891 (Utah 2d Dist. Apr. 19, 2021) (ECF No. 2-

4

2[2], at 20.) According to Petitioner,[3] one of the local officers testified at the evidentiary hearing that he did not perceive any exigent circumstances when he arrived, but he was aware of the possibility of danger from the caller's perspective. ECF No. 21, at 6-7. According to Petitioner, the officer further testified that "I didn't feel like anything seemed too dangerous, everything appeared to be somewhat calm when I was walking on until [Petitioner] immediately got confrontational." *Id*. at 7.

Petitioner filed a Supplemental Motion to Suppress All Evidence and Statements on April 29, 2021. *State v. Martin*, Case No. 201701891, dkt. no. 158 (Utah 2d Dist. Apr. 29, 2021). On May 3, 2021, Petitioner filed a five-part brief supporting his motion to suppress. *Id*. dkt. nos. 162-166. Oral arguments on the motion to suppress were held on May 6, 2021. *Id*. dkt. no. 168. The trial judge verbally denied the motion to suppress after oral arguments and directed the state's attorney's to prepare a proposed order. *Id*. at 1; *see also* Transcript of Oral Ruling Denying Suppression (ECF No. 2-4.[4]) According to the partial transcripts submitted as an exhibit to the original petition, the trial judge noted that the physical evidence introduced at trial had all been obtained pursuant to the probation search. *Id*. at 13-4 ("There simply was no evidence that was found entering the yard, or detaining [Petitioner], or arresting [Petitioner], or even making what the State terms as a protective sweep of the house.") The trial judge conceded that Petitioner strenuously objected to the search and there were no exigent circumstances after Petitioner had been detained. *Id*. at 5. The judge further conceded that a warrant would have been required if

---

[2] Petitioner submitted a copy of the docket for the trial proceedings as an exhibit to his original petition (ECF No. 2). That Petition was superseded by the Amended Petition (ECF No. 12), which does not include any evidentiary exhibits. However, the docket is available through the state's online case portal.
[3] Petitioner's pro se briefs include numerous references to transcripts of proceedings in the state courts which were not presented to this court. Neither party submitted a transcript of the Evidentiary Hearing to allow the court to verify the alleged quotations. Nor are the transcripts available to this court on the state's online docket portal.
[4] The Amended Petition (ECF No. 12) does not include an exhibit containing the transcripts of the oral ruling denying suppression.

Petitioner had not been on supervised release. *Id*. at 6-7. The Judge noted that three officers testified at the evidentiary hearing that witnesses had reported that Petitioner had held Victim hostage with a machete and that the weapon was still in the house prior to the search. *Id*. at 11-22.

After the second day of testimony in the bench trial, Petitioner reasserted his motion to suppress and challenged several elements of the proposed order. Petitioner argued that trial testimony had exposed discrepancies in testimony from the evidentiary hearing which undermined the basis for the probation search. ECF No. 20-6, at 6-10. For example, Petitioner argued that the police's body-camera footage disproved the probation officer's evidentiary hearing testimony that witnesses had personally told him about the machete prior to the probationary search. *Id*. The trial court denied the reasserted motion and ruled that there had been reasonable basis for the probation search based on information learned by police irrespective of whether the federal officers discussed the machete in their conversations with witnesses. *Id*. at 20.

The trial court issued its written order denying the motion to suppress on May 26, 2021. (ECF No. 20-4.) The written order included a finding of fact that "After being debriefed, the U.S. Probation Officers personally spoke with the three witnesses on scene. Officer McBride testified that the witnesses advised him that [Petitioner] had been in Possession of a 'large knife or machete' with a yellow string or chord attached." *Id*. at 6.

On appeal, Petitioner challenged the warrantless entry into the yard, his detention by local officers, and the probation search. Petitioner eventually abandoned his challenge of the probation search. Much of Petitioner's appeal focused on his contention that officers required a warrant to enter the yard regardless of whether he had a reasonable expectation of privacy based on any efforts

6

to shield the area from public view. Appellant Brief, *Utah v. Martin*, Case No. 20210435-CA (ECF

No. 20-12, at 25-32.) Petitioner argued that the trial court had erred in its suggestion that the yard

was analogous to an open field.

> As articulated in my brief and during oral arguments, my yard satisfied the curtilage factors set forth in [*United States v. Dunn*]. These factors are typially [sic] assessed by courts in determining whether an area is within the curtilage of a house for Fourth Amendment purposes, because as the Supreme Court has repeatedly held, the area "immediately surrounding and associated with the home", [sic] what their cases call the curtilage, is "part of the home itself for Fourth Amendment Purposes" (See *Oliver v. United States*, 488 US 170, 180 (1984)) and therefore "enjoys protection as part of the home itself." (See *Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013).

*Id*. at 14. Petitioner argued that although the Supreme Court had applied a reasonable expectation

of privacy standard for Fourth Amendment protections in certain circumstances (*see, e.g.*, *Katz v.*

*United States*, 389 U.S. 347 (1967)) the Supreme Court had also held that "the *Katz* reasonable-

expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory

test." ECF No. 20-12, at 28 (quoting *United States v. Jones*, 565 U.S. 400, 409 (2012)) (emphasis

in *Jones*). Finally, Petitioner briefly argued that his co-habitant's consent over his objection was

no substitute for a warrant:

> And finally, in conclusion of my first argument, although a consent exception was never asserted by the State, should they now claim that Roommate's 911 call somehow furnished consent, I believe the holding in *Georgia v. Randolph*, 547 U.S. 103 (2006), as cited in my brief and at Oral Arguments, should properly dispose of the issue:
> "This case invites a straightforward application of the rule that a physically present inhabitant's express refusal of consent to a police search is dispositive as to him regardless of the consent of a fellow occupant."

*Id*. at 31-2. Petitioner offered no further analysis of *Randolph.*

The Utah Court of Appeals affirmed the trial court's denial of Petitioner's motion to

suppress. The Order of Affirmance did not include an analysis of the cases Petitioner had cited to

define curtilage protections, nor discussion of warrant requirements generally. Instead, the

opinion focused on Petitioner's citation to *Randolph*:

> In arguing that the local officers were unlawfully in the yard (or 'curtilage') of the residence, Martin principally relies upon *Georgia v. Randolph*, 547 U.S. 103, 120 (2006), for its holding 'that a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.'"

Order of Affirmance, (ECF No. 20-16, at 2.) The Court of Appeals recited factual findings from the district court's order denying suppression:

> . . . . local officers entered the yard, over Martin's objections, to investigate Martin's co-tenant's 911 call that claimed she was being kicked out of residence she had rented and that "she was held hostage yesterday against her will with a machete." The co-tenant was located inside her vehicle that was parked on the lawn near the front porch "in an area of the property completely open to view from the nearby street and sidewalk. The co-tenant was prevented from leaving by a chain across the driveway.

*Id*. The Court of Appeals concluded that

> The district court did not err in denying the motion to suppress because the local officers' entry into the property to investigate the 911 call was not a trespass and there was no search of any area after entry that would not have been in plain view. Furthermore, Martin's argument that all evidence should be excluded based upon the allegedly illegal entry into the yard ignores that discovery of the machete was pursuant to the search by federal probation officers, which was conducted pursuant to the federal probation agreement. Martin no longer challenges that search, as least for purposes of this appeal. Finally, the co-tenant's voluntary decision to speak with law enforcement and to testify does not result from the local officer's decision to enter and remain on the property over Martin's objection.

ECF No. 20-16, at 3. The Utah Supreme Court denied certiorari.

Petitioner sought federal habeas relief in this court, asserting two claims that his conviction relied on evidence obtained in violation of the Fourth Amendment.

## LEGAL STANDARDS

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*

8

*v. Powell*, 428 U.S. 465, 494 (1976). "The phrase 'full and fair litigation' means (1) 'the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' (2) a 'full and fair evidentiary hearing,' and (3) 'recognition and at least colorable application of the correct Fourth Amendment constitutional standards.'" *Quezada v. Raemisch*, 770 F. App'x 442, 444 (10th Cir. 2019) (quoting *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978)); *United States v. Lee Vang Lor*, 706 F.3d 1252, 1258 (10th Cir. 2013) ("An 'opportunity' for full and fair consideration requires at least 'the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' a 'full and fair evidentiary hearing,' and 'recognition and at least colorable application of the correct Fourth Amendment constitutional standards.'")

### Search

The Fourth Amendment protects against unreasonable searches and seizures. U.S.C.S. Const. Amend. 4 ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). "It must be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222 (1960). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "[W]arrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement." *Kentucky v. King*, 563 U.S. 452, 462 (2011) (examining circumstances where exigent circumstances render a warrant unnecessary); *United States v. Creighton*, 639 F.3d 1281, 1286 (10th Cir. 2011) ("The Defendant has the burden of establishing . . . standing, or, in other words, a subjective expectation of privacy in the [area searched] that society is prepared to recognize as reasonable.")

Police officers may enter a home without a warrant to protect an occupant from imminent

9

injury. *Kentucky v. King*, 563 U.S. at 460. Further,

> it would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a . . . co-tenant objected. (And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause.

*Georgia v. Randolph*, 547 U.S. 103, 118 (2006).

The area immediately surrounding and associated with the home, or "curtilage" is treated as part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (prohibiting the use of a trained dog within curtilage of a home to search for drugs without a warrant). When an officer obtains information by physically intruding on a protected area, he performs a search governed by the Fourth Amendment. *Id.* at 5–6. But, police may enter the curtilage without a warrant to the extent that the entry is consistent with reasonable expectations of privacy. *Id*. at 8-9 ("a police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." (internal citations omitted)).

## ANALYSIS

Petitioner argues that police officers required a warrant to enter his yard over his objection to investigate his co-habitant's 911 call. Amended Petition (ECF No. 13, at 4 ("There can be no reasonable dispute that when the officer invaded my yard to investigate- over my stated objection- that this violated the Fourth Amendment through [*United States v. Jones*, 565 U.S. 400, 408 n.5 (2012)], [*Florida v. Jardines*, 569 U.S. 1, 5 (2013)] and [*Collins v. Virginia,* 584 U.S. 586, 593 (2018)].").) The question before this court is whether the state courts afforded Petitioner a full and fair opportunity to litigate his Fourth Amendment claims. *See Stone v. Powell*, 428 U.S. 465 (1976) ("[W]here the State has provided an opportunity for full and fair

10

litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.") The phrase 'full and fair litigation' means (1) "the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' (2) a 'full and fair evidentiary hearing,' and (3) 'recognition and at least colorable application of the correct Fourth Amendment constitutional standards.'" *Quezada v. Raemisch*, 770 F. App'x 442, 444 (10th Cir. 2019).

Utah state courts afforded Petitioner a full and fair opportunity to litigate his Fourth Amendment claims. Petitioner filed a motion to suppress "all evidence" arguing that it was "fruit of the poisonous tree," after the officers entered his yard over his objection without a warrant. ECF No. 20-3, at 1. The trial court conducted an evidentiary hearing. ECF No. 20-4, at 1. The state courts recognized and applied the correct constitutional standards in denying Petitioner's motions to suppress all evidence.

## Search

Petitioner is ineligible for federal habeas relief because the state courts already afforded him a full and fair opportunity to litigate his Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. at 494. Police entered Petitioner's yard over his objection in response to his housemate's 911 call complaining that she was being evicted by a roommate who had held her hostage with a machete the day before. After interviewing Victim and other housemates in the yard, the police notified federal probation officers of evidence that Petitioner had violated the terms of his supervised release. Federal officers conducted a probation search which discovered multiple weapons belonging to Petitioner. At trial, Petitioner moved to suppress all evidence. Petitioner argued that all evidence, including testimony by Victim, the investigating officers and other witnesses, was fruit of the police's allegedly unlawful entry into his yard. The trial court conducted an evidentiary hearing, reviewed extensive briefing and heard oral arguments on the

11

motion to suppress. The trial court then denied the motion. The trial court reasoned that the police did not require a warrant to enter the yard to speak with Victim, "because there was no search of any area concealed from public view." ECF No. 20-4, at 9.

The Utah Court of Appeals affirmed the trial court's denial of Petitioner's motion to suppress. The Court of Appeals recited the following factual findings from the district court's order denying suppression:

> [T]he district court found that the local officers entered the yard, over Martin's objections, to investigate Martin's co-tenant's 911 call that claimed she was being kicked out of a residence she had rented and that "she was held hostage yesterday against her will with a machete." The co-tenant was located inside her vehicle that was parked on the lawn near the front porch "in an area of the property completely open to view from the nearby street and sidewalk. The co-tenant was prevented from leaving by a chain across the driveway.

ECF No. 20-16, at 2. The Court of Appeals examined *Georgia v. Randolph*, 547 U.S. 103 (2006). As noted by the Utah Court of Appeals, the *Randolph* opinion "stated that no question was presented in that case, nor 'reasonably could be, about the authority of police to enter a dwelling to protect a resident from domestic violence; so long as they have good reason to believe such a threat exists . . . however much a spouse or other co-tenant objected.'" ECF No. 20-16, at 2 (quoting *Randolph* at 118 (alteration in original)). The Court of Appeals concluded that

> The district court did not err in denying the motion to suppress because the local officers' entry into the property to investigate the 911 call was not a trespass and there was no search of any area after entry that would not have been in plain view. Furthermore, Martin's argument that all evidence should be excluded based upon the allegedly illegal entry into the yard ignores that discovery of the machete was pursuant to the search by federal probation officers, which was conducted pursuant to the federal probation agreement. Martin no longer challenges that search, as least for purposes of this appeal. Finally, the co-tenant's voluntary decision to speak with law enforcement and to testify does not result from the local officer's decision to enter and remain on the property over Martin's objection.

ECF No. 20-16, at 3. The Utah Supreme Court denied certiorari.

12

The Utah Court of Appeals provided "at least colorable application of the correct Fourth Amendment constitutional standards." *See Quezada v. Raemisch*, 770 F. App'x at 444. Petitioner's complaint that the Utah court of Appeals applied the wrong standard for curtilage is unavailing. By applying *Randolph*, which involved a dwelling subject to full protection under the Fourth Amendment, the Court of Appeals bypassed the necessity to address the distinction between curtilage and open fields.

Second, the determination that local officers did not conduct a Fourth Amendment search when they interviewed witnesses in the curtilage in response to Victim's 911 call is at least a colorable application of the correct constitutional principles. *See Randolph v. Georgia*, 547 U.S. at 118 ("it would be silly to suggest that the police would commit a tort by entering . . . to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected."); *see also, United States v. Paetsch*, 782 F.3d 1162, 1169 (10th Cir. 2015) ("we are bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"). Officers entered the yard over Petitioner's objection because they had been informed that Petitioner had threatened Victim's life and held her hostage at the point of a machete on the previous day, Petitioner was trying to evict her and Victim had retreated to her vehicle, because of the dispute. The officers reasonably entered the yard "to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much [Petitioner] objected." *See Randolph* at 118.

The Utah state courts have already afforded Petitioner a full and fair opportunity to litigate his claim that his conviction relied on evidence obtained by an unlawful search. The state courts performed at least a colorable application of the constitutional principle that police may

13

enter a dwelling without a warrant to investigate domestic violence at the invitation of a victim. Therefore, Petitioner is ineligible for habeas relief. *See Stone v. Powell*, 428 U.S. at 494.

**Detention**

Petitioner likewise had a full and fair opportunity to litigate his claim that all trial evidence should have been suppressed because local police detained him without a warrant. The state courts made a colorable application of the correct constitutional principles when they denied the motion to suppress because no evidence derived from the detention. Both the district court and the Utah Court of Appeals concluded that Petitioner failed to show that the measures taken during his detention elevated the interaction to an arrest. ECF No. 20-4, at 10 ("The police detained Defendant based on reasonable suspicion and to prevent him from interfering with their investigation. Their decision to use handcuffs in that decision is not one the Court will second guess."); ECF No. 20-16, at 3 ("We agree with the State that police officers conducted only a level-two investigatory detention.") But both courts denied Petitioner's motion to suppress because Petitioner failed to connect any evidence to the detention. The district court concluded that "[m]ost importantly, where the detention was followed by a Terry-frisk yielding contraband. Where no evidence was obtained as a result of this detention, the Court must deny the motion to suppress on this issue." ECF No. 20-4, at 10. Similarly, the Order of Affirmance concluded that

> No evidence was derived from the detention or any statements during detention that should have been suppressed. Although Martin seeks generally to suppress all testimony of the investigating officer and other witnesses because it "derives so immediately" from his detention, the assertion lacks merit.

ECF No. 20-16, at 4.

Petitioner failed to identify a constitutional basis for his motion to suppress. Petitioner did not establish that any evidence derived from the detention. The bulk of Petitioner's arguments on the detention issue focused on whether the detention was an arrest and whether police may

14

conduct a detention within the curtilage without a warrant. Petitioner made only a conclusory attempt to establish a legal basis to suppress the testimonial evidence offered by his roommates and the investigating officers:

> I assert that because of the tight, causal nexus between the unlawful search and subsequent seizure and the acquisition of evidence in the curtilage of my home, this derivative testimonial evidence was tainted and as a result, this court should reverse the district court's Order and GRANT the motion to suppress. See *Wong Sun v. United States*, 371 US 471 (1963). "[T]estimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies." *Wong Sun*, at 485. "Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest … is no less the fruit of official illegality than the more common tangible fruits of the unwarranted intrusion." *Id*. at 485-86. The testimony of Officer Singleton and my roommates must therefore be suppressed.

ECF No. 20-12, at 35-36. Petitioner offered no further analysis of *Wong Sun*.

Petitioner failed to offer any analysis pertaining to the consensual nature of the police's interaction with the witnesses. Petitioner merely argued that

> Prior to officers seizing me, they had not learned anything from Chritine Allman or Mark Brundage. Statements from these two, and from Gwilliam- were obtained while I was confined in the police truck. This verbal evidence was a direct product of the seizure of my person. Officers learned what they learned only by trespassing on the curtilage then confining me in the police truck and unlawfully remaining on my property.

ECF No. 20-14, at 30. Petitioner offers no authority to support his contention that information obtained from other witnesses after he had been detained "was a direct product of the seizure of [his] person."

The physical evidence against Petitioner was obtained pursuant to a lawful probation search.[5] The terms of Petitioner's supervised release agreement state that he "must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon" and

---

[5] Petitioner's appeal initially challenged the legitimacy of the probation search conducted by federal officers, but those claims were abandoned. *See* Motion to Amend Appeal (ECF No. 20-15.)

require that Petitioner submit his "person, residence, office or vehicle to search, conducted by the probation office as [sic] a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband of a violation of a condition of release." Conditions of Probation and Supervised Release, at 2 (ECF No. 20-22.) As has previously been discussed, the state courts reasonably concluded that police did not require a warrant to enter the curtilage to investigate his housemate's 911 call. Petitioner's housemates provided information that supported reasonable suspicion required to conduct a probation search of Petitioner's home. Although Petitioner was detained and escorted away from the area during the investigation, no additional evidence was obtained as a result of the detention.

Because no evidence was obtained as a result of the detention, Petitioner's citation to *Wong Sun* and other cases are unavailing. *See Wong Sun* at 485 ("[i]f knowledge of [facts obtained after an unreasonable searches and seizure] is gained from an independent source they may be proved like any other."). Petitioner has identified no constitutional principles which require evidence to be suppressed merely because it was obtained after an allegedly improper detention. Petitioner offered no authority for the proposition that a complaining victim, or other witnesses, may be prevented from testifying at trial if the police execute an allegedly unlawful detention in response to the complaint. In this case, Victim and the other witnesses voluntarily provided investigators with sufficient information to justify the probation search.

The Utah state courts have already afforded Petitioner a full and fair opportunity to litigate his claim that his conviction relied on evidence obtained after he was unlawfully detained. The state courts performed at least a colorable application of the constitutional principle that evidence obtained through an independent source is admissible. Therefore, Petitioner is ineligible for habeas relief. *See Stone v. Powell*, 428 U.S. at 494.

16

## CONCLUSION AND ORDER

Petitioner is ineligible for federal habeas relief because the state courts afforded him a full and fair opportunity to litigate his Fourth Amendment claims. *See Stone v. Powell*, 428 U.S. at 494. Accordingly, the Petition is DISMISSED.

A certificate of appealability is DENIED.

DATED March 25, 2026.

BY THE COURT:

_____

JUDGE TED STEWART
United States District Court

17